[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 69.]

THE STATE EX REL. YOUNGSTOWN ET AL. *v*. MAHONING COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Youngstown v. Mahoning Cty. Bd. Of Elections*, 1995-Ohio-184.]

*Mandamus ordering and writ of prohibition restraining Mahoning County Board of Elections and its members not to conduct or hold a primary or general election until 1997 for the office of member of Youngstown City Council denied, when.*

(No. 95-294—Submitted March 21, 1995—Decided March 30, 1995.)

IN MANDAMUS and PROHIBITION.

———————————

{¶ 1} In 1993, Section 5 of the Youngstown Home Rule Charter provided in pertinent part that "[t]he legislative power of the City, except as reserved to the people by this Charter, by means of the initiative and referendum, shall be vested in a council of seven members, elected by wards, one from each ward, and for a term of two years."  On July 21, 1993, the city council of Youngstown approved placing on the November 2, 1993 general election ballot a proposed charter amendment to modify Section 5 as follows:

"The legislative power of the City, except as reserved to the people by this Charter, by means of initiative and referendum, shall be vested in a council of seven members, elected by wards, one from each ward, and for *a maximum of two (2) complete consecutive terms of four (4) years each.  He will be eligible for election after an intervening term*."  (Emphasis *sic*.)

{¶ 2} The charter amendment contained an effective date of January 1, 1994.  The charter amendment was placed on the November 2, 1993 general election ballot and was approved by the electorate.

{¶ 3} The current members of Youngstown City Council, relators herein, were elected at the November 2, 1993 general election for terms commencing January 1, 1994. Their petitions, as well as the petitions of other candidates for city council, reflected that they were running for two-year terms, in accordance with the existing charter provision. By legal opinion dated April 13, 1994, Youngstown City Law Director, Edwin Romero, responded to a question by city council member John A. Nittoli by concluding that the charter amendment which passed in November 1993 applied to relators city council members so that their current terms are four-year terms beginning January 1, 1994, and ending December 31, 1997, rather than two-year terms ending December 31, 1995.

{¶ 4} On January 20, 1995, pursuant to a request made by respondent Mahoning County Board of Elections ("board"), the Mahoning County Prosecuting Attorney, James A. Philomena, issued an opinion to the board in which he concluded that the charter amendment did not apply to current council members because neither the candidates that ran for city council in the May 1993 primary nor the primary voters anticipated either the term limitation or the extension of the terms of council members, i.e., the charter amendment could not apply retroactively to candidates who had already run in the primary. As a result, Philomena opined that members of city council were currently serving two-year terms.

{¶ 5} Based on Philomena's opinion letter, the board on January 23, 1995 decided to conduct a primary election on May 2, 1995 (and, presumably, a general election on November 7, 1995) for the office of council member in each ward in Youngstown. As of February 6, 1995, three candidates had filed petitions to run for the office of city council member.

{¶ 6} On February 9, 1995, relators, the city of Youngstown and its council members, filed a complaint seeking (1) a writ of prohibition restraining respondents, the board and its members, from conducting or holding a primary or general election until 1997 for the office of member of Youngstown City Council,

and (2) a writ of mandamus ordering respondents not to conduct or hold a primary or general election until 1997 for the office of member of Youngstown City Council. We granted an alternative writ and the parties filed briefs on the merits of this cause.

———————————

*McTigue & Brooks* and *Donald J. McTigue*, for relators.

*James A. Philomena*, Mahoning County Prosecuting Attorney, and *Diane Politi*, Assistant Prosecuting Attorney, for respondents.

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Dennis Haines* and *Barry Laine*, urging dismissal for *amicus curiae*, John R. Swierz.

———————————

*Per Curiam.*

{¶ 7} Initially, relators have filed a memorandum in opposition to John R. Swierz's *amicus* brief. Swierz is one of the candidates who has filed a petition to run for city council. Although we denied Swierz's motion to intervene because of his failure to comply with Civ.R. 24(C), his *amicus* brief requires no leave of court. See S.Ct.Prac.R. VI(5) and X(8). Accordingly, Swierz's brief was properly filed, and it is considered in our determination of the merits.

{¶ 8} As to relators' mandamus claim, as respondents note, where a petition filed in this court or a court of appeals is purportedly in mandamus but the allegations manifestly indicate that the real object is injunction, the petition does not state a cause of action for mandamus and must be dismissed for want of jurisdiction. *State ex rel. Governor v. Taft* (1994), 71 Ohio St.3d 1, 3, 640 N.E.2d 1136, 1137-1138; *State ex rel. Walker v. Bowling Green* (1994), 69 Ohio St.3d 391, 392, 632 N.E.2d 904, 905. The essence of relators' request for mandamus relief is injunctive, *i.e.*, to enjoin respondents from holding any election for city council until 1997. Therefore, relators' mandamus claim lacks merit.

**{¶ 9}** Relators also seek a writ of prohibition which requests the same relief: to enjoin respondents from holding a city council election until 1997. In order to obtain a writ of prohibition, relators must establish that (1) respondents are about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 234-235, 638 N.E.2d 541, 543.

**{¶ 10}** With respect to the first requirement, respondents claim that they are not exercising either judicial or quasi-judicial power. Quasi-judicial authority is defined as "'the power to hear and to determine controversies between the public an individuals which require a hearing resembling a judicial trial ***.'" *State ex rel. Hensley v. Nowak* (1990), 52 Ohio St.3d 98, 99, 556 N.E.2d 171, 173, citing *State ex rel. Methodist Book Concern v. Guckenberger* (1937), 57 Ohio App. 13, 16-17, 9 O.O. 30, 31, 11 N.E.2d 277, 279, affirmed (1937), 133 Ohio St. 27, 9 O.O. 432, 10 N.E.2d 1001; *State ex rel. Delaware Cty. Ampitheater Action Comm. v. Ohio Dept. of Liquor Control* (1994), 94 Ohio App.3d 680, 682, 641 N.E.2d 765. The act of placing issues on the ballot is ministerial rather than quasi-judicial so prohibition will not lie to prevent their placement. *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections* (1993), 67 Ohio St.3d 334, 337, 617 N.E.2d 1120, 1123; *State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga Cty. Bd. of Elections* (1991), 60 Ohio St.3d 44, 46, 573 N.E.2d 596, 599; *State ex rel. Burech v. Belmont Cty. Bd. of Elections* (1985), 19 Ohio St.3d 154, 156, 19 OBR 437, 438, 484 N.E.2d 153, 155; cf. *State ex rel. Barton v. Butler Cty. Bd. Of Elections* (1988), 39 Ohio St.3d 291, 530 N.E.2d 871, and *State ex rel. Patton v. Meyers* (1933), 127 Ohio St. 169, 186 N.E. 241 (Secretary of State and boards of elections exercise quasi-judicial power when determining the sufficiency of referendum petitions). One appellate court has concluded that the placement of names on a ballot is similarly ministerial rather than quasi-judicial. *State ex rel. Sweet v. Hancock Cty. Bd. of Elections* (Oct.

25, 1993), Hancock App. No. 5-93-43, unreported, dismissed on appeal as moot at 70 Ohio St.3d 1464, 640 N.E.2d 526.

{¶ 11} Nevertheless, prohibition has been held to be an appropriate remedy to prevent the Secretary of State or a board of elections from placing on a ballot the names of candidates, whose names may not lawfully be placed there. *State ex rel. Newell v. Brown* (1954), 162 Ohio St. 147, 54 O.O. 392, 122 N.E.2d 105, paragraph two of the syllabus; *State ex rel. Fite v. Saddler* (1991), 62 Ohio St.3d 170, 172, 580 N.E.2d 1065, 1066. However, both *Newell* and *Fite* were cases in which statutory written protests against specific candidates were filed with the boards of elections, which meant that the boards were required to hold quasi-judicial hearings on the protests. See R.C. 3513.05 and 3501.39.

{¶ 12} There is no evidence here that any written protest has been filed against any candidate. Moreover, a written protest under R.C. 3501.39 and/or 3513.05 would be inapplicable since relators' objection is not against the qualifications of particular candidates, but instead assails the entire 1995 city council election, i.e., relators city council members attack even their own ability to be candidates for the 1995 election.

{¶ 13} Respondents' decision to conduct the city council election in 1995 for terms commencing in January 1996 was thus not the appropriate subject for a statutory protest. Therefore, no hearing was required. Since no hearing resembling a judicial trial was either required or conducted, respondents' decision to conduct the election was ministerial rather than quasi-judicial. *Fite, Newell,* and *State ex rel. Shumate v. Portage Cty. Bd. of Elections* (1992), 64 Ohio St.3d 12, 591 N.E.2d 1194, are distinguishable since written protests were filed, thereby requiring hearings and the exercise of quasi-judicial authority. Other cases have suggested the propriety of a writ of prohibition to prevent the Secretary of State or boards of elections from placing on a ballot the names of candidates that may not lawfully be placed there, even where the facts do not expressly indicate the filing of a protest.

However, the writ was denied in these cases for other reasons, and there was no analysis of whether the challenged decisions were ministerial or quasi-judicial.. See, *e.g., State ex rel. Barth v. Hamilton Cty. Bd. of Elections* (1992), 65 Ohio St.3d 219, 602 N.E.2d 1130; *State ex rel. Smith v. Hummel* (1946), 146 Ohio St. 341, 32 O.O. 416, 66 N.E.2d 111; *State ex rel. Stanley v. Bernon* (1933), 127 Ohio St. 204, 187 N.E. 733. Accordingly, since respondents' decision was not quasi-judicial, prohibition does not lie.

{¶ 14} Further, as to the second requirement for the issuance of a writ of prohibition, a board's exercise of judicial or quasi-judicial power is unauthorized if it engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions. See *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections* (1994), 70 Ohio St.3d 413, 414, 639 N.E.2d 78, 79, quoting *State ex rel. Carr v. Cuyahoga Cty. Bd. of Elections* (1992), 63 Ohio St.3d 136, 138, 586 N.E.2d 73, 74 ("In extraordinary actions for review of a decision by a board of elections, the standard is 'whether the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions.'") There is no evidence or argument that respondents engaged in fraud or corruption. Instead, relators apparently contend that respondents abused their discretion and acted in clear disregard of the charter amendment by deciding to hold city council elections this year.

{¶ 15} In reaching its decision, respondents relied on the county prosecutor's determination that application of the amendment, approved in November 1993 and effective January 1, 1994, to city council candidates elected in November 1993 for terms beginning January 1, 1994, would violate Section 28, Article II of the Ohio Constitution, which provides that "[t]he General Assembly shall have no power to pass retroactive laws ***." This constitutional prohibition against retroactive laws is equally applicable to charter amendments. *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 597, 600, 622

N.E.2d 329, 331 (plurality opinion). Additionally, absent any provision in the Youngtown Home Rule Charter regarding the interpretative issues involved, we may apply the general laws regarding statutory interpretation. *Id.*

{¶ 16} "'The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Upon its face, R.C. 1.48 establishes a threshold analysis which must be utilized prior to inquiry under Section 28, Article II of the Ohio Constitution.'" *Nease v. Medical College Hosp.* (1992), 64 Ohio St.3d 396, 398, 596 N.E.2d 432, 434, quoting *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus; see, also, *State ex rel. Plavcan v. School Emp. Retirement Sys. of Ohio* (1994), 71 Ohio St.3d 240, 242, 643 N.E.2d 122, 124. R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless made retrospective."

{¶ 17} In addition, "'[m]unicipal charters are to be construed as to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible. In the absence of circumstances requiring otherwise, language used in a municipal charter is to be construed according to its ordinary and common usage.'" *State ex rel. Paluf v. Feneli* (1994), 69 Ohio St.3d 138, 142, 630 N.E.2d 708, 711, quoting 1 Gotherman & Babbit, Ohio Municipal Law (2 Ed.1992) 55, Section T 4.39.

{¶ 18} Applying the foregoing rules of construction to the Youngstown charter amendment, it is apparent that the amendment does not specify its effect on those council members elected in November 1993. Instead, the extended terms and corresponding term limits are referenced by the word "elected." In other words, the charter, as amended, provides that "[t]he legislative power of the City *** shall be vested in a council of seven members, elected *** for a maximum of two (2) complete consecutive terms of four (4) years each." In the absence of any

specification in the charter amendment that it would apply to council members elected at the November 1993 general election, the court must afford the amendment a prospective interpretation. R.C. 1.48. Since the amendment became effective January 1, 1994, it only applies to *elections* held on or after that date. Relators council members, who were elected in November 1993, were not "elected *** for" the extended four-year terms. This interpretation harmonizes the electors' decisions to vote for council candidates who had circulated petitions indicating that they were running for two-year council terms, while simultaneously approving the charter amendment establishing four-year terms and term limits.

{¶ 19} However, relators contend that this court's holding in *State ex rel. Frankenstein v. Hillenbrand* (1919), 100 Ohio St. 339, 126 N.E. 309, is "directly on point" and "controlling" in this case. In *State ex rel. Frankenstein*, Eli G. Frankenstein tendered several nominating petitions to have his name placed on the November 4, 1919 general election ballot as an independent candidate for mayor of Cincinnati. After the county board of elections refused to place his name on the ballot, Frankenstein instituted a mandamus action in this court. We denied the writ on the basis that a charter was approved in the same November 1917 election in which the incumbent mayor was elected. Although prior to the approval of the charter, the mayor's term was set by statute as two years, the charter extended the term to four years.

{¶ 20} Relators are correct that *State ex rel. Frankenstein* held that the extended terms set forth in a charter approved by the electorate in the November 1917 election applied to a mayor elected at the same election. However, in *State ex rel. Frankenstein, supra*, 100 Ohio St. at 343, 126 N.E. at 310, the charter included the express provision that "[t]he Mayor, President of Council or Vice-Mayor, and Councilmen elected at the election held November 6, 1917, shall hold their respective offices for four years commencing January 1, 1918 ***." There is no similar specific expression in the Youngstown charter amendment that the term

extensions apply retrospectively to council members elected in November 1993. Other cases cited by relators are similarly distinguishable. See, *e.g., State ex rel. McGovern v. Bd. of Elections of Cuyahoga Cty*. (C.P.1970), 24 Ohio Misc. 135, 53 O.O.2d 147, 263 N.E.2d 586 (1970 charter amendment increasing terms specified its application to the municipal elections held in November 1969); and *State ex rel. Pecyk v. Greene* (1953), 102 Ohio App. 297, 2 O.O.2d 322, 114 N.E.2d 922 (1953 charter amendment specified its application to 1953 general election).

{¶ 21} Similarly, in *Calogero v. State ex rel. Treen* (La.1984), 445 So.2d 736, the Supreme Court of Louisiana held that when an election establishing a term of office fixed in the state constitution is held, the constitution in effect at the time of the election, rather than a new constitution approved at the same election, controls the length of the term. As one of the concurring justices emphasized, the new constitution did not expressly provide for the circumstance of a judge elected prior to the new constitution's effective date for a term which began contemporaneously with the effective date. *Id.* at 740 (Lemmon, J., concurring).

{¶ 22} For the foregoing reasons, respondents neither abused their discretion nor acted in clear disregard of the charter amendment since the amendment's extended terms and corresponding term limits applied only to city council elections held after the amendment's effective date of January 1, 1994. Therefore, even assuming, *arguendo*, that respondents' decision was quasi-judicial, their exercise of quasi-judicial authority was not unauthorized. Relators thus failed to establish two of the elements required for the issuance of a writ of prohibition.

{¶ 23} Accordingly, for the foregoing reasons, both writs are denied.

*Writs denied.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

———————————